IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| JERMAINE COLEMAN | NO. 15-543 |

DuBois, J.                                                                                               March 3, 2016

## **M E M O R A N D U M**

### I.   INTRODUCTION

This case presents a narrow question: whether the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution bars the retrial of a defendant who, after his guilty plea is accepted by the Court, succeeds in having the indictment dismissed without prejudice based on a violation of the Interstate Agreement on Detainers Act. The Court concludes that re-prosecution of a defendant in such a situation does not violate the Double Jeopardy Clause.

Presently before the Court is defendant Jermaine Coleman's Motion to Dismiss the Indictment for Violation of the Double Jeopardy Clause of the Fifth Amendment. For the reasons that follow, the Court denies the Motion.

### II.   BACKGROUND

The facts of this case are not in dispute. On March 19, 2013, Coleman was arrested by Pennsylvania state authorities on open state bank robbery charges and a state detainer for a parole violation. On May 8, 2013, the Pennsylvania Board of Probation and Parole ("Parole Board") revoked Coleman's parole and recommitted him on his state sentence for a period of six months. He was incarcerated at the George W. Hill Correctional Facility ("George W. Hill").

While Coleman was incarcerated on the parole violation and pending state charges, on July 11, 2013, a federal grand jury issued an Indictment charging Coleman with three counts of

bank robbery in violation of 18 U.S.C. § 2113(a). Proceedings on this Indictment were filed in Criminal Action Number 13-356. On July 17, 2013, the Federal Bureau of Investigation ("FBI") lodged the arrest warrant with Pennsylvania prison authorities as a detainer against Coleman. Subsequently, on July 23, 2013, the FBI removed Coleman from George W. Hill pursuant to a writ of habeas corpus *ad prosequendum* issued by this Court. Later that day, Coleman appeared before United States Magistrate Judge Lynne Sitarski for an initial appearance, hearing on pretrial detention and arraignment. Coleman pled not guilty to all three counts of the Indictment and was remanded to the custody of the U.S. Marshals.

Following a series of continuances at Coleman's request, on August 21, 2014, in accordance with a Plea Agreement with the Government, Coleman pled guilty to the three counts of the Indictment. During a colloquy with the Court, Coleman admitted that he committed the crimes charged as described in the Factual Basis for the Plea section of the Government's Change of Plea Memorandum. Coleman was then returned to federal custody at the Federal Detention Center in Philadelphia ("FDC").

While incarcerated pending sentencing, due to FDC overcrowding, Coleman was transferred by the U.S. Marshals from FDC to George W. Hill, to be held in a special unit for federal prisoners. Upon arrival at George W. Hill, Coleman was erroneously admitted as a Pennsylvania state prisoner, rather than a federal prisoner. Once in state custody, Coleman was transferred by state officials to the Pennsylvania State Correctional Institution at Graterford. Coleman remained at SCI Graterford from March 30, 2015, until April 22, 2015, when this Court issued a writ of habeas corpus ordering Coleman transferred from SCI Graterford back to the custody of the U.S. Marshals.

On June 3, 2015, Coleman filed a Motion to Dismiss the Indictment for Violation of the Interstate Agreement on Detainers Act ("IADA") on the ground that his transfer from federal to state custody violated the IADA's "anti-shuttling provision," 18 U.S.C. App. 2, § 2, Art. IV(e). Over the Government's opposition, the Court concluded that there had been a violation of the anti-shuttling provision and granted the Motion by Memorandum and Order dated November 5, 2015. The Court dismissed the Indictment without prejudice pursuant to 18 U.S.C. App. 2, § 9(1). By Order dated December 10, 2015, the Court denied Coleman's Motion for Reconsideration of the determination that the dismissal of the Indictment was without prejudice.

On November 5, 2015, the Government initiated the above-captioned criminal case, Criminal Action Number 15-543, by filing a Criminal Complaint against Coleman, charging him with three counts of bank robbery in violation of 18 U.S.C. § 2113(a). On November 17, 2015, a federal grand jury returned an Indictment in that case, charging Coleman with three counts of bank robbery based on the same underlying conduct as the first Indictment.

On December 22, 2015, Coleman submitted a letter to the Court requesting, *inter alia*, to proceed *pro se*. On December 28, 2015, Coleman filed the pending *pro se* Motion to Dismiss the Indictment for Violation of the Double Jeopardy Clause. Following a hearing on January 20, 2016, and by Order that same date, the Court granted Coleman's request to proceed *pro se* on a limited basis for the sole purpose of litigating the issues presented by the Motion to Dismiss the Indictment. The Court requested supplemental briefing on issues presented at the hearing by defendant. The parties subsequently submitted supplemental briefs and the Motion is now ripe for resolution.

**III.    DISCUSSION**

Coleman avers that the Double Jeopardy Clause bars his re-indictment on the charges contained in the first Indictment, which the Court dismissed without prejudice as a result of the IADA violation. Coleman asserts that jeopardy attached in the first action on August 21, 2014, when the Court "accepted the defendant's unconditional guilty plea and thereafter declared the defendant adjudged guilty of all 3 counts on the indictment." Def.'s Mot., at 4 (citing *United States v. Jerry*, 487 F.2d 600, 606 (3d Cir. 1973)). Coleman argues that there was a "termination of jeopardy in the defendant's favor" when "this Court ordered a post-trial dismissal of that Indictment based on the statutory defense asserted by the defendant, arising from the Government's violation of the [IADA]." Def.'s Reply, at 1. Thus, in Coleman's view, "although Section 9 of the IADA provides an exception [a dismissal of the indictment without prejudice] to the bar in reprosecution that the statute mandates when the federal government violates [its] provisions, that exception was invalidated . . . at the stage in the proceedings where the violation occurred, [because] it directly conflicted with the constitutional prohibition against multiple reprosecutions for the same offense." Def.'s Reply, at 1-2. Coleman contends that this result is mandated by *United States v. Wilson*, 420 U.S. 332 (1975), which "govern[s] all post trial rulings by a trial court that represents a termination of jeopardy in the defendant's favor." Def.'s Reply, at 2.

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that "no person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." As Coleman notes, it is well established that jeopardy normally attaches at the time that the Court accepts a defendant's guilty plea. *Jerry*, 487 F.2d at 606.

However, it is equally well established that "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988); *see Jerry*, 487 F.2d at 606 ("[W]here a defendant by his own motion causes the withdrawal of his guilty plea, he has waived his right not to be put in jeopardy a second time."). "This rule . . . is necessary in order to ensure the sound administration of justice [because] . . . it would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Lockhart*, 488 U.S. at 38 (quotations and citations omitted); *see also United States v. Hecht*, 638 F.2d 651, 657 (3d Cir. 1981) ("[W]here there is no threat of multiple punishment or successive prosecutions, the double jeopardy clause is not offended."). Thus, if a criminal indictment is dismissed without prejudice on motion of a defendant, retrial for the same offense does not violate the Double Jeopardy Clause. *See United States v. Huang*, 960 F.2d 1128, 1133-34 (2d Cir. 1992) (concluding that retrial following a mistrial and dismissal without prejudice did not violate Double Jeopardy Clause).

This rule was first stated in *United States v. Ball*, 163 U.S. 662, 671-72 (1896), and is sometimes referred to as the *Ball* principle. In *Ball*, three co-defendants were tried for murder on a defective indictment. *Id.* at 664-65. The jury found two defendants guilty and acquitted the third. *Id.* The Supreme Court concluded that the Double Jeopardy Clause did not bar re-indictment of the defendants who had been found guilty. *Id.* at 672. This principle has been extended to allow re-prosecution following a variety of other procedural defects, including errors

in jury instructions and prejudicial conduct by the trial judge. *See United States v. Tateo*, 377 U.S. 463, 465-66 (1964).

However, the Supreme Court in *Ball* determined that the Double Jeopardy Clause did not bar re-prosecution of the defendant who was acquitted, even though the indictment on which that defendant was tried was defective. 163 U.S. at 672. This rule has been extended to orders having the effect of an acquittal: if an appellate court determines that the trial court "*should* have entered judgment of acquittal" or if the trial court grants a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, the Double Jeopardy Clause bars re-indictment. *Lockhart*, 488 U.S. at 39 (emphasis in original) (citing *Burks v. United States*, 437 U.S. 1 (1978)).

In an attempt to distinguish this case from *Ball* and subsequent cases, Coleman correctly points out that those cases all involved "some error in the proceedings *leading to conviction*." *Lockhart*, 488 U.S. at 38 (emphasis added). He argues that a violation of the IADA "provides a defendant with an absolute defense," and therefore the dismissal of the indictment on IADA grounds was "equivelant [sic] to acquittal." Def.'s Reply, at 10-11.

The Court is not aware of, and the parties have not identified, any other cases involving the exact set of facts presented in this case—specifically, re-indictment of a defendant following dismissal of an indictment on defendant's motion for error unrelated to the proceedings "leading to conviction." However, the Court concludes that the logic of the *Ball* principle and its application in subsequent cases does not bar re-prosecution in this case.

Coleman's argument that the dismissal following the IADA violation was equivalent to an acquittal is unavailing. The dismissal of the Indictment for violation of the IADA did not in any way undermine Coleman's conviction. Coleman's conviction was based on the facts to

6

which he admitted at the change of plea hearing, as set forth in the Government's Change of Plea Memorandum. Instead, the Indictment was dismissed due to a procedural defect caused by events subsequent to conviction.

Furthermore, a violation of the IADA provides a prisoner with an "absolute defense" to the underlying indictment only in instances in which the indictment must be dismissed with prejudice. *United States v. Williams*, 615 F. 2d 585, 589 (3d Cir. 1980). If the United States lodges a detainer against a defendant in state custody, as in this case, a dismissal under the IADA may be either with or without prejudice. 18 U.S.C. App. 2, § 9(1). Thus, the "absolute defense" is subject to a statutory exception. In this case, the Court determined, for the reasons set forth at length in the Memorandum and Order dated November 5, 2015, that, after consideration of the factors listed at § 9(1) of the IADA, the facts of this case required dismissal of the Indictment without prejudice. Therefore, Coleman was not entitled to an "absolute defense" under the terms of the IADA, but only to dismissal of the indictment without prejudice. Because Coleman was not entitled to dismissal of the Indictment with prejudice, the Court made no determination equivalent to a favorable ruling on a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(a).

This conclusion is in accordance with the policies underlying the Double Jeopardy Clause and the *Ball* principle. There was no danger of multiple punishments being imposed in this case because the Indictment was dismissed prior to sentencing. *See Hecht*, 638 F.2d at 657. Coleman's lament that he is being subjected to multiple prosecutions is unpersuasive because the second prosecution is the direct result of his successful attempt to have the prior indictment dismissed. By attacking the Indictment on IADA grounds after pleading guilty to the charges contained therein, Coleman consented to being twice put in jeopardy. *Jerry*, 487 F.3d at 606

("By requesting that the district court remove him from the jeopardy of the guilty plea, Jerry clearly consented to being twice put in jeopardy." (quotation omitted)). Thus, Coleman's case falls squarely within the logic of *Lockhart* and a retrial in this case "is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed." 488 U.S. at 42. A defect in the Indictment unrelated to Coleman's guilt or innocence should not immunize him from punishment. *See Tateo*, 377 U.S. at 466.

Coleman also argues that his re-prosecution in this case is barred by *United States v. Wilson*, 420 U.S. 332 (1975), because the Government could have chosen to appeal the Court's dismissal of the prior Indictment. The Court rejects this argument. Although *Wilson* establishes that the Government may, in some instances, appeal from a trial court's order dismissing the indictment without offending the Double Jeopardy Clause, it in no way compels such an appeal and has no bearing on the Double Jeopardy Clause analysis in this case. *See Wilson*, 420 U.S. at 1026-27.

## IV.    CONCLUSION

For the foregoing reasons, Coleman's Motion to Dismiss the Indictment for Violation of the Double Jeopardy Clause of the Fifth Amendment is denied. An appropriate order follows.