## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERMAINE COLEMAN | CRIMINAL ACTION<br>NO. 15-543 |

**PAPPERT, J.**                                    **October 22, 2021**

### <u>MEMORANDUM</u>

Jermaine Coleman moves for early termination of his supervised release.  (ECF No. 97.)  The Government opposes the Motion, (ECF No. 100), which the Court denies for the reasons that follow.

I

In March of 2013, Jermaine Coleman robbed three banks in five days.  (Guilty Plea Agreement at 1, ECF No. 49.)  Each time, Coleman threatened to kill the tellers, passing them notes that they would be "the first to die" if they did not comply with his demands.  (Expedited Presentence Investigation Report ("PSR") at ¶¶ 11–13.)  While on this violent crime spree, Coleman was on parole arising from a 2002 state court conviction for criminal conspiracy to commit robbery, false imprisonment, and possessing an instrument of crime.  *Coleman v. United States*, No. CV 20-1769, 2020 WL 4220489, at *1 (E.D. Pa. July 22, 2020).

On March 20, the Pennsylvania Board of Probation and Parole ("PBPP") lodged a warrant against Coleman based on his arrest for the bank robberies and related crimes.  *Id.*  The PBPP sentenced him to six months imprisonment for changing his residence without permission, but postponed further action pending the resolution of his criminal

1

charges. *Id.* The order stated that he would be "reparoled automatically without further action of the Board on 09/20/2013," and that the maximum sentence for any parole violation would expire on September 11, 2015. *Id.* That initial warrant was lifted on September 4, 2015. *Id.*

In the interim, Coleman was indicted by a federal grand jury on three counts of bank robbery in violation of 18 U.S.C. § 2113(a). He pleaded guilty to all three counts on December 5, 2017. (J. Criminal Case, ECF No. 59.) Judge DuBois sentenced him to 78 months of imprisonment, followed by three years of supervised release. (*Id.*) Coleman was also ordered to pay a $300 assessment and $8,973 in restitution. (*Id.*)

After his conviction, Coleman was transferred to state custody, where the PBPP sentenced him to 10 months and 28 days in prison for violating parole, in addition to "backtime" he had accrued while his charges were pending. *Coleman*, 2020 WL 4220489, at *1. He returned to federal custody on January 23, 2019.

In April of 2020, Coleman filed a habeas petition alleging that the Bureau of Prisons miscalculated his sentence. *Id.* at 1. The BOP concluded that his sentence commenced on January 23, 2019. Using that as a starting point, it determined that he was entitled to prior custody credit for time served starting on September 5, 2015. *Id.* at 2. Coleman maintained that Pennsylvania had relinquished primary jurisdiction over him when it lifted the initial warrant against him, and that his federal sentence should have accordingly commenced on the day of his sentencing, not when he was returned to federal custody. *Id.* If he had been sentenced on that date, he would have been eligible for prior custody credit starting on September 21, 2013, the day after he finished his sentence for his first parole violation. *Id.* at 3.

Judge DuBois ultimately agreed with Coleman.  *Id.* at 4.[1]  On July 22, 2020, he ordered BOP to award Coleman credit for time served between September 21, 2013 and September 4, 2015.  The BOP determined that Coleman's recalculated release date was May 29, 2019.  (Gov. Resp. Opp. Def.'s Mot. at 2, ECF No. 100.)  It released him on July 23, 2020, the day after Judge DuBois' decision.  (*Id.*)  Coleman served approximately fourteen months more than he would have had his release date been properly calculated.  (*Id.*)

Thirteen months later, Coleman moved to terminate his supervised release pursuant to 18 U.S.C. § 3583(e).  (Mot., ECF No. 97.)[2]  He offers three arguments for early termination.  First, the extra time served because the BOP miscalculated his sentence weighs in favor of reducing his period of supervised release.  (*Id.* at 8–9.) Second, Coleman's rehabilitation over the past year, as shown by his employment, charitable work and community ties, justifies early release.  (*Id.* at 9–10.)  Third, the conditions of supervised release — particularly those governing out-of-district travel and interactions with known felons — impede his professional and charitable ventures. (*Id.* 13–14.)

While it acknowledges the positive steps Coleman has taken to become a productive member of society, the Government believes his extensive criminal history warrants continued supervision.  (Gov. Resp. at 2.)

---

[1]     Judge DuBois initially denied Coleman's habeas petition, *Coleman v. United States*, No. CV 20-1769, 2020 WL 2079406 (E.D. Pa. Apr. 30, 2020), but reconsidered and vacated that decision after new evidence emerged to support Coleman's interpretation of events, *Coleman*, 2020 WL 4220489, at *2, 5.

[2]     On September 9, 2021, Coleman's case was reassigned to this Court. (Order Reassigning Case, ECF No. 99).

3

II

The Court "may . . . terminate a term of supervised release and discharge the

defendant released at any time after the expiration of one year of supervised

release . . . if it is satisfied that such action is warranted by the conduct of the

defendant released and the interest of justice."  18 U.S.C. § 3583(e)(1).  In analyzing a

request for early termination of supervised release, the Court must consider the

following factors under 18 U.S.C. § 3553(a):

    (1) the nature and circumstances of the offense and the defendant's history and characteristics;

    (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentence and sentencing range established for the defendant's crimes;

    (4) pertinent policy statements issued by the United States Sentencing Commission;

    (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (quoting *United States v. Davies*,

746 F. App'x 86, 89 (3d Cir. 2018)).   As long as it indicates that it has considered the

§ 3353(a) factors, "a district court enjoys discretion to consider a wide range of

circumstances when determining whether to grant early termination."  *Id.* at 52

(quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).  "[E]xceptional,

extraordinary, new, or unforeseen circumstance[s]" are not a prerequisite for early

termination.  *Id.* at 52.  However, because sentences must be "sufficient, but not greater

than necessary" when first imposed, early termination is "'[g]*enerally*' . . . proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Id.* at 53 (quoting § 3553(a), then *United States v. Davies*, 746 F. App'x 86, 89 (3d Cir. 2018)).

III

After considering the relevant § 3553(a) factors, the Court concludes terminating Coleman's supervised release would be premature and inappropriate.  Most significantly, the nature and circumstances of Coleman's crimes, his criminal history, and the need to deter criminal conduct and protect the public all counsel strongly against ending Coleman's supervision after just fifteen months.  *See* § 3553(a)(1), (2)(B)–(C).

Coleman's offenses were serious and violent.  In less than a week, he committed three bank robberies during which terrorized innocent bank tellers by threatening their lives.  He had four prior convictions at the time, including one for a gunpoint robbery that ended in a high-speed chase through Philadelphia.  (PSR ¶ 57–60.)  And he committed the robberies underlying his federal conviction while on parole. These violent acts, combined with Coleman's history of criminal conduct while under court-ordered supervision, underscore the importance of continuing supervision.

Coleman's proffered reasons for terminating his supervised release do not outweigh the evident need for additional supervision.  Coleman points to his full time employment at a title company, his new company "Coleman International, LLC," his work as a paralegal for his counsel in this case, his charitable work with the City of Dreams Coalition and his strong ties with family and friends as evidence of his

rehabilitation.  (Mot. at 5–6, 11–14.)  While Coleman's efforts to better himself and make a positive impact on the community are admirable, "basic compliance with the terms of supervised release generally is not enough to warrant termination of supervised release." *United States v. Damiano*, No. CR 07-153, 2020 WL 7263183, at *2 (E.D. Pa. Dec. 10, 2020).

Nor has Coleman provided much of an argument that the conditions of his supervised release are too harsh or stringent to effectuate "the twin goals of punishment and rehabilitation." *Id.* at *3.  Coleman and his supporters assert that the restrictions on travel and interacting with known felons will prevent him furthering his business, assisting his counsel's legal practice, or working with the City of Dreams Coalition.  (Mot. 13–14.)  But Coleman is not subject to absolute bans on out-of-district travel or interactions with known felons.  Instead, the conditions of his release simply require him to receive permission from his probation officer before he engages in those activities.  (J. Criminal Case at 4.)  Coleman has offered no specific examples of why this procedure is impractical or burdensome, or of times he has been denied permission to travel or to interact with felons for purposes that are legitimately related to his professional or charitable endeavors.  Even if the conditions proved cumbersome, early termination would not be the appropriate response.  Instead, Coleman could request, and, if appropriate, his probation officer could propose for the Court's consideration specific modifications to his conditions of release that would address any purported impediments to his career.  Such requests are routinely considered by probation officers, who are in the first instance best positioned to address their merits.

Finally, while the BOP's error in calculating Coleman's release date was unfortunate, it does not justify early termination of his supervised release. "Imprisonment and supervised release serve distinct purposes." *United States v. Joline*, 662 F.3d 657, 659 (3d Cir. 2011).  An improper extension of one does not entitle Coleman to a reduction of the other.  Indeed, the Supreme Court has explained that "the objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release." *United States v. Johnson*, 529 U.S. 53, 59 (2000).  The improper extension of incarceration is an equitable factor that courts can consider when deciding whether to modify or terminate supervised release pursuant to § 3583(e), *id.*, but the ultimate decision remains discretionary, guided by the relevant § 3553(a) factors, the defendant's conduct and the interests of justice. *Burkey v. Marberry*, 556 F.3d 142, 150 (3d Cir. 2009).  Where other factors counsel so strongly against early termination, a mistake in calculating the terms of incarceration should not undermine the purposes of supervised release.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.


7